DELBELLO DONNELLAN WEINGARTEN                          *Hearing Date: April 28, 2016*
WISE & WIEDERKEHR, LLP                                 *Hearing Time: 11:00 a.m.*
*Proposed Attorneys for the Debtor*
One North Lexington Avenue, 11th Floor
White Plains, New York 10601
(914) 681-0200
Jonathan S. Pasternak, Esq.
Julie Cvek Curley, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:

97 GRAND AVENUE, LLC,                                  Chapter 11
                                                       Case No. 15-13367(SHL)

                        Debtor.
-----------------------------------------------------------------X

## DEBTOR'S MOTION IN SUPPORT OF APPROVAL OF SETTLEMENT AGREEMENT BETWEEN, INTER ALIA, THE ALLEGED DEBTOR AND AARON DRAZIN PURSUANT TO BANKRUPTCY RULE 9019

**TO:   THE HONORABLE SEAN H. LANE,
       UNITED STATES BANKRUPTCY JUDGE:**

97 Grand Avenue, LLC, the above captioned debtor and debtor in possession (the "Debtor"), by its undersigned attorneys, DelBello Donnellan Weingarten Wise & Wiederkehr, LLP, hereby files this motion ("Motion") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("FRBP") for approval of the Settlement Agreement (the "Drazin Settlement Agreement") by and between, *inter alia,* the Debtor and Aaron Drazin ("Drazin"), which settlement agreement, *inter alia,* effectively resolves all pending disputes between the respective parties, satisfies Drazin's claims against the Debtor and will help facilitate the sale of the Property (defined below) to the benefit of the estate and its other creditors.  In support of this Motion, the Debtor respectfully states as follows:

**JURISDICTION AND VENUE**

1.  The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The statutory bases for the relief requested herein are §§ 105(a) and 363 of Title 11 of the United States Code, 11 U.S.C. §§101, et seq. (the "Bankruptcy Code") and FRBP Rule 9019.

BACKGROUND

4.  On December 28, 2015, (the "Petition Date"), Chun Peter Dong, an alleged creditor of the Debtor, caused an involuntary petition under Chapter 7 of the Bankruptcy Code (the "Petition") to be filed against the Debtor in the United States Bankruptcy Court, Southern District of New York (the "Bankruptcy Court"), in the above captioned involuntary Chapter 7 case (the "Involuntary Case").

5.  The time for the Debtor to respond to the Petition was adjourned on consent from time to time.

6.  On February 26, 2016, Grand Avenue timely answered the Petition (ECF Docket No. 17).

7.  No order for relief was entered in the Involuntary Case.

8.  On April 13, 2016, the Bankruptcy Court, upon application by the Debtor, entered an order converting the Involuntary Case to a voluntary proceeding under Chapter 11 of the Bankruptcy Code.

9.  The Debtor is a debtor in possession with authority to conduct its business affairs and act as statutory trustee of the estate pursuant to Sections 1107 and 1108 of the Code.

10. As of the date hereof no trustee, examiner or committee has been appointed in the Bankruptcy Case.

11. The Debtor is a single asset real estate company with its only asset being certain real property identified as 97-101 Grand Avenue, a/k/a 96 Steuben Street, Brooklyn, New York 11205 (the "Property"). The Property consists of an 11 story, 27 residential rental unit building located in the Clinton Hill section of Brooklyn. The building is almost fully occupied.

### Background of Drazin's Claims Against, *Inter Alia*, The Debtor

12. In 2014, Drazin and Harry a/k/a Chaim Miller ("Miller"), the Debtor's sole member, and Shimi a/k/a Sam Sprei ("Sprei"), a business associate of Miller, were involved in certain business transaction, pursuant to which Drazin has claimed to have loaned Miller and/or Sprei and/or their various related entities the principal sum of $1,400,000.

13. Miller and Sprei have asserted that they repaid no less than $300,000 of the initial loan obligation, with the principal balance plus accrued and unpaid interest, fees and expenses admittedly unpaid

14. In 2014, Drazin commenced a series of actions and litigations against, inter alia, to recover the monies he was allegedly owed.

15. As of the Petition Date there exist, in addition to an answer filed By Drazin in Madison Realty's pending state court foreclosure action against the Property, 6 actions in New York State Courts concerning or involving Drazin, Grand Avenue, Grand Avenue Member Sprei and/or Miller to be resolved by this Agreement:

3

- *Bao Di Liu, Plaintiff, v. Sam Sprei, Harry Miller a/k/a Chaim Miller, Xiu Yu Huang and 3 Mitchell Place Loft, LLC, Defendants,* New York State Supreme Court, New York County, Index No. 156325/2015 (the "Liu Action")

- *Aaron Drazin, Plaintiff, v. Sam Sprei a/k/a Shimi Sprei, Defendant,* New York State Supreme Court, Kings County, Index No. 2769/2012 (the "Sprei Action")

- *Aaron Drazin, Plaintiff, v. The Leser Group and Abraham Leser, Defendants, and The Leser Group and Abraham Leser, Third Party Plaintiffs, v. Sam Sprei a/k/a Shimi Sprei and Charles Mandelbaum Third Party Defendants,* New York State Supreme Court, Kings County, Index No. 7386/2012 (the "Leser Action")

- *Aaron Drazin, Petitioner, Judgment Creditor, v. Morgan Stanley Smith Barney, LLC, a/k/a Morgan Stanley and Elky Miller, Respondents, and Harry a/k/a Chaim Miller, Judgment Debtor,* New York State Supreme Court, New York County, Index No. 150738/2016 (the "Morgan Stanley Proceeding")

- *Aaron Drazin, Plaintiff, v. Chaim Miller a/k/a Harry Miller, Sam Sprei, a/k/a Shimi Sprei, 97 Grand Avenue LLC and 11-45 Ryerson Holding, LLC Defendants,* New York State Supreme Court, Kings County, Index No. 512405/2014 (the "Turnover Action")

- *97 Grand Ave Brooklyn First, Plaintiff, v. 97 Grand Avenue LLC, Et Al, Defendants,* Kings County Supreme Court, Kings County, Index No. 5097072015 (the "Madison Foreclosure Action")

(Collectively, the Liu Action, the Sprei Action, the Leser Action, the Morgan Stanley Proceedings, the Turnover Action and the Madison Foreclosure Action are referred to as the "State Court Actions").

15. Prior to the Petition Date, in the Sprei Action, by confession of judgment entered February 3, 2012 in the New York State Supreme Court, Kings County, Drazin obtained a judgment against Sprei for the principal amount of $1,469,147.28, plus interest at the judgment rate of 9% from and after February 3, 2012 (the "Sprei Judgment").

16. On December 31, 2014, Drazin commenced the Turnover Action seeking a turnover order and judgment in connection with alleged fraudulent transfers by Sprei, Miller, the Debtor and 11-45 Ryerson Holding, LLC ("Ryerson") in violation of the Sprei Judgment.

17. On December 4, 2015, the Court in the Turnover Action entered an order and judgment (the "Turnover Order and Judgment") in favor of Drazin against each of Sprei, Miller, the Debtor and Ryerson Properties, jointly and severally in the principal sum of $1,566,172.55, plus interest at the judgment rate of 9% from and after November 13, 2015, plus attorneys' fees and expenses in an amount to be determined, for the willful and intentional fraudulent conveyances and/or constructive fraudulent conveyances perpetrated by such parties in violation of the Sprei Judgment.

18. Pursuant to the Turnover Order and Judgment, the Court further granted Drazin a priority interest, pursuant to N.Y.C.P.L.R. §5202(b) and 5234(c), in the amount of the judgment as against the Property and the interests of the Debtor and Grand Avenue Member LLC, having

5

found that the Debtor and Grand Avenue Member LLC are the alter egos of Sprei and the other defendants and that such parties participated in fraudulent conveyances of property of Sprei including the Property.

19. The Debtor, Sprei and Miller have disputed and contested such findings and appealed the Turnover Order and Judgment.

20. Pursuant to the Turnover Order, the Court appointed Richard A. Klass, Esq. as receiver (the "Receiver") to sell the Property and directed the principals of the Debtor and Grand Avenue Member LLC to deliver to the Receiver their membership certificates.

21. Pursuant to the Turnover Order, the Court directed the Debtor and Grand Avenue Member LLC to deliver to Drazin a deed for the Property.

22. On July 2, 2015 a Notice of Pendency was recorded in the Turnover Action by Drazin by order of the New York State Supreme Court against the Property.

23. On December 3, 2015 the Turnover Order and Judgment was recorded as a lien against the Property and multiple other properties.

24. Drazin has undertaken various post-judgment collection efforts in furtherance of the Sprei Judgment and the Turnover Order and Judgment.

25. The fling of the Involuntary Petition stayed all enforcement and other actions as against the Debtor and the Property, respectively. Upon information and belief, the Receiver never took possession of any property of the Debtor.

26. The Debtor has now obtained an order for relief under Chapter 11 of the Bankruptcy Code in order to facilitate a sale of the Property pursuant to a Chapter 11 plan.

### The Drazin Settlement Agreement

27.     In an effort to avoid complex, time consuming and costly and litigation concerning, *inter alia*, Drazin's claims and enforcement actions as detailed above, the parties negotiated, through their respective counsel, a settlement and compromise of Drazin's claims as set forth in the Drazin Settlement Agreement.

28.     The Drazin Settlement Agreement[1], a copy of which is annexed as **Exhibit "A"**, can be summarized as follows:

  a. Drazin shall, in addition to any monies heretofore recovered on account of his judgment, be paid the additional sum of $1,235,000 (the "Settlement Payment") in full and final satisfaction of all claims against, inter alia, the Debtor, the Property, Miller and Sprei, respectively;

  b. The Settlement Payment shall be made no later than one (1) business days after entry of an order by the Bankruptcy Court approving the settlement becomes final and nonappealable;

  c. The Settlement Payment shall be made from the Drazin's counsel's escrow account.[2]

  d. Upon receipt of the Settlement Payment, all of the State Court Actions shall be dismissed with prejudice and discontinued, and the parties to the Settlement Agreement, including Drazin, the Debtor, the Property, Miller, Sprei and various related entities, affiliates and parties in interest shall execute mutual releases.

  e. The orders and judgments entered in the State Court Actions shall be deemed satisfied.

---

[1] Defined terms shall have the meanings set forth in the Settlement Agreement, as applicable.
[2] The Settlement Payment shall be made from third party (non-Debtor) funds to be delivered into escrow with Teitelbaum Law Group, LLC, counsel for Drazin, as escrow agent.

## REQUEST FOR APPROVAL OF DRAZIN SETTLEMENT
## AGREEMENT PURSUANT TO FRBP RULE 9019

29.     The Debtor submits that approval of the Drazin Settlement Agreement is in its best interest since the Settlement Agreement will result in the Debtor clearing up various encumbrances and title problems that have resulted from the Drazin actions and matters described above.

30.     In addition, the Debtor will be released of any further claims of Drazin.

31.     The Drazin Settlement Agreement is critical to the Debtor's efforts to reorganize. Approval of the Drazin Settlement by this Court is a condition of Madison Realty Capital and its affiliates ("Madison"), the holder of the first mortgage and mezzanine loan position against the Debtor, its affiliates and the Property, agreeing to fund the Settlement Payment identified therein. In addition, approval of the Drazin Settlement Agreement is a further condition to Madison's agreement to restructure, workout and/or forbear their obligations which will now enable the Debtor to sell the Property and pay all allowed creditors of the estate in full under a contemplated 363 sale, auction and plan process to be implemented shortly. To the extent approved by this Court, such approval of each settlement will be reflected in separate orders submitted to the Court.

32.   FRBP Rule 9019(a) permits this Court to approve a compromise or settlement. The Rule provides:

>   *(a)   Compromise.* On motion by the trustee and after notice and a hearing the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct

33.   Neither FRBP Rule 9019 nor any section of the Code explicitly sets forth the standards by which a court is to evaluate a proposed settlement for approval. However, the standards for approval of settlements in bankruptcy cases are well established in the case law, focusing upon whether the proposed settlement is reasonable and in the best interests of creditors. *See* Protective Committee v. Anderson, 390 U.S. 414 (1968), *reh'g denied,* 391 U.S. 909 (1968).

34.   In deciding whether a proposed compromise is fair and equitable, reasonable and in the best interests of creditors, courts in the Second Circuit follow the analysis first articulated by the Supreme Court in Anderson, as developed and applied by the case law. Thus, courts assess a proposed settlement based upon a consideration of some or all of the following factors:[3]

---

[3] *See* City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974); In re Ionosphere Clubs, Inc., 156 B.R. 414, 427 (S.D.N.Y. 1993); In re Purified Down Products Corp., 150 B.R. 519, 522 (S.D.N.Y. 1993); In re International Distribution Centers, Inc., 103 B.R 420, 422 (S.D.N.Y. 1989); In re Fugazy, 150 B.R. 103,106 (Bankr. S.D.N.Y. 1993); In re Drexel Burnham Lambert Group, Inc., 134 B.R. 499, 506 (Bankr. S.D.N.Y. 1991); In re Crowthers McCall Pattern, Inc., 120 B.R. 279, 287 (Bankr. S.D.N.Y. 1990); In re Texaco, Inc., 84 B.R.893, 901 (Bankr. S.D.N.Y. 1988); In re Lion Capital Group, Inc., 49 B.R. 163, 175 (Bankr. S.D.N.Y. 1985); In re Carla Leather, Inc., 44 B.R.457, 466 (Bankr. S.D.N.Y. 1984), *aff'd* 50 B.R. 764 (S.D.N.Y. 1985); In re W.T. Grant Co., 4 B.R. 53,69 (Bankr. S.D.N.Y.). *aff'd,* 20 Bankr. 186 (S.D.N.Y.), *aff'd,* 699 F. 2d 599 (2d Cir. 1983), *cert. denied sub nom.* Cosoff v. Rodman, 464 U.S. 822 (1983). *See also* In re Jackson Brewing Co., 624 F. 2d 599, 602 (5th Cir. 1980).

      (i)      the relative benefits to be received by creditors under the proposed settlement;

      (ii)      the likelihood of success in the litigation compared to the present and future benefits offered by the proposed settlement;

      (iii)      the prospect of complex and protracted litigation if settlement is not approved;

      (iv)      the attendant expense, inconvenience and delay of litigation;

      (v)      the probable difficulties of collecting on any judgment that might be obtained;

      (vi)      the competency and experience of counsel who support the proposed settlement;

      (vii)      the extent to which the settlement is the product of arm's-length bargaining, and not the product of fraud or collusion;

      (viii)      the nature and breadth of any releases to be issued as a result of the proposed settlement; and

      (ix)      the paramount interest of the creditors and proper deference to their reasonable views.

35. In evaluating the propriety of a settlement in concert with the foregoing factors, the court need not conduct a trial, "mini-trial," or "a rehearsal of the trial" on the merits to actually resolve the extant factual and legal issues, but must simply consider whether against the background of those issues, the settlement is reasonable. Newman v. Stein, 464 F. 2d 689, 692 (2d Cir. 1972), *cert. denied sub nom.* Benson v. Newman, 409 U.S. 1039 (1972). *See also,* International Distribution, 103 B.R. at 423; Drexel Burnham, 134 B.R. at 496. In so doing, the court may consider the settlement in the context of its familiarity with the history of the case, the complexity of the claims alleged, the parties, and the context in which the claims and the settlement arose. *See* Anderson, 390 U.S. at 444; Purofied Down Products, 150 B.R. at 519, 524; International Distribution Centers, 103 B.R. at 423.

36. The settlement evaluation process is not designed to substitute the court's judgment for that of a trustee. Carla Leather, 44 B.R. at 465. While the Court is not expected to "rubber stamp" a proposed settlement, the Court should give considerable weight to the informed judgment of the Debtor that the compromise is fair and equitable and the support of the Committee to the settlement, See Anderson, 390 U.S. at 444; Ionosphere, 156 B.R. at 426; International Distribution Centers, 103 B.R. at 423; Drexel, 134 B.R. at 496; Carla Leather, 44 B.R. at 472. As articulated by the district court in International Distribution Centers, the Court should give weight to the support not only of the Debtor's counsel but of other counsel to a settlement in determining the wisdom of the compromise. International Distribution Centers, 103 B.R. at 423.

37. The Debtor and its counsel have determined that the Drazin Settlement Agreement is fair and reasonable for several reasons. First, the Drazin Settlement Agreement does not require the Debtor to pay any monies to obtain the release of the Drazin liens, claims and encumbrances against the Debtor and the consideration the Debtor is receiving under the Drazin Settlement Agreement.

38. The Drazin Settlement Agreement helps clear up significant control and title issues caused by the Drazin claims and litigations. The Drazin Settlement Agreement also paves the way for the Debtor to restructure, workout and/or obtain forbearance of its debt obligations with affiliates of Madison in such a way as will permit the Debtor to sell the Property and pay all allowed creditors, subject to a competitive sale and plan process.

39. Furthermore, the Debtor would possibly have to further litigate with Drazin absent the Drazin Settlement Agreement, causing further time delay, cost, risk and uncertainty to the Debtor and its estate.

40. The Debtor therefore submits that approval of the Drazin Settlement Agreement is in the best interests of the Debtor and its estate since the Settlement Agreement effectively resolves all disputed claims and issues with Drazin, and the Debtor's estate will avoid the costs and time delay that would be associated with further protracted litigation and discovery, and the Debtor believes that the consideration given by the parties in the Settlement Agreements is fair and reasonable.

## REQUEST FOR HEARING ON SHORTENED NOTICE PURSUANT TO LOCAL BANKRUPTCY RULE 9077-1

41. The Debtor hereby requests that the Court schedule a hearing to consider approval of the Drazin Settlement Agreement on shortened notice, as the Debtor has serious time exigencies that affect the effective administration of its estate going forward.

42. First, the Debtor is under an approximate 60 day deadline with Madison to restructure its Madison obligations and sell the Property under a plan.

43. Secondly, the Debtor still needs to expeditiously administer its estate and file and confirm a plan which contemplates the sale of the Property and up to 100% distribution to all allowed creditors. Absent approval of the Settlement Agreement, Drazin will not support the Debtor's efforts in Chapter 11 and/or may seek to immediately convert the proceedings back to Chapter 7.

44. As the Settlement Agreement essentially only confer benefits on the estate and does not burden or require monies from the estate, the Settlement Agreement should be easily approved.

45. Typically, a motion to approve a settlement is a twenty-one (21) day motion pursuant to Federal Rule of Bankruptcy Procedure 2002. However, the Federal Rules of Bankruptcy Procedure provide for a shortening of time under certain circumstances.

46. Federal Rule of Bankruptcy Procedure 9006(c) provides as follows:

(c) *Reduction.*

(1) *In General.* Except as provided in paragraph (2) of this subdivision, when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without motion or notice order the period reduced.

(2) *Reduction Not Permitted.* The court may not reduce the time for taking action under Rules 2002(a)(7), 2003(a), 3002(c), 3014, 3015, 4001(b)(2), (c)(2), 4003(a), 4004(a), 4007(c), 4008(a), 8002, and 9033(b). In addition, the court may not reduce the time under Rule 1007(c) to file the statement required by Rule 1007(b)(7).

47. Thus, the Federal Rules of Bankruptcy Procedure specifically authorize the Court to hear a motion such as the Motion herein on shortened notice, for cause shown.

48. Absent a hearing on shortened notice, the Debtor may not be able to effectuate a confirmable plan in this case.

49. Accordingly, the Debtor requests that the Court schedule a hearing to consider approval of the Settlement Agreement on shortened notice on April 28, 2016 or as soon as practicable thereafter.

50. The Affidavit of Jonathan S. Pasternak pursuant to Local Bankruptcy Rule 9077-1 is annexed hereto.

51. Notice of this Motion will be provided to (i) Office of the United States Trustee; (ii) parties who have filed notices of appearance; and (iii) all creditors. The Debtor submits that said notice is adequate and proper.

### REQUEST FOR WAIVER OF STAY OF EFFECTIVENESS OF
### APPROVAL ORDER PURSUANT BANKRUPTCY RULES 4001 AND 6004

52. In light of the time exigencies surrounding the Drazin Settlement and the Chapter 11 case as a whole, the Debtor requests that the Court waive the 14 day stay of effectiveness provided under Bankruptcy Rules 4001 and 6004 in the proposed order approving the Drazin Settlement.

### CONCLUSION

53. In light of the foregoing, the Debtor respectfully submits that the settlement embodied in the Drazin Settlement Agreement falls well above "the lowest point in the range of reasonableness" and is in the best interests of the estate at large and should therefore be approved. Accordingly, the Debtor respectfully requests the Court approve the Drazin Settlement Agreement in its entirety.

54. No previous application for the relief herein requested has been made to this or any other Court.

**WHEREFORE,** the Debtor respectfully requests that the Court approve and authorize the Drazin Settlement Agreement, together with such other and further relief as is just and proper under the circumstances.

Dated: White Plains, New York
April 13, 2016

DELBELLO DONNELLAN WEINGARTEN
WISE & WIEDERKEHR, LLP
*Proposed Attorneys for the Debtor*
One North Lexington Avenue, 11th Floor
White Plains, New York 10601
(914) 681-0200

By: */s/ Jonathan S. Pasternak*
Jonathan S. Pasternak